**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON LINDSEY** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **3:CV-06-1220** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **CHASE HOME FINANCE L.L.C.** | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the Court is Defendant Chase Home Finance L.L.C.'s ("Chase") Motion to Dismiss Plaintiff Sharon Lindsey's Amended Complaint.  This matter was originally filed in state court and was removed to this Court.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).[1]  For the reasons that follow, Chase's motion to dismiss will be granted in part and denied in part.

## I. BACKGROUND

On December 19, 1995, Ms. Lindsey entered into a Mortgage Agreement (the "Agreement") with Chase granting a security interest in real property located at 164 Creek Road Factoryville, Pennsylvania (the "Property").  (Defendant's Notice of Removal, Exhibit E - Plaintiff's Amended Complaint, Dkt. Entry 1-7, at ¶ 4.)  The Agreement allegedly required Ms.

---

[1]Ms. Lindsey is a citizen of Pennsylvania (see Defendant's Notice of Removal, Exhibit E - Plaintiff's Amended Complaint, Dkt. Entry 1-7, at ¶ 1), Chase is a Delaware corporation with its principal place of business in Ohio, (see Defendant's Notice of Removal, Dkt. Entry 1-1, at ¶ 21), and the amount in controversy exceeds $75,000.

Lindsey to insure the Property against, inter alia, loss arising from floods.  (See id. at ¶ 14; see also id. (Exhibit A thereto, at ¶ 4).)  Chase withheld $10.90 from each monthly payment, which in turn would be used to purchase, and pay premiums for, a disaster mortgage protection policy.  (See id. at ¶¶ 6, 15.)  The disaster mortgage protection policy (the "Ace Policy") was obtained from Ace American Insurance Company ("Ace").  (Id. at ¶ 6.)  The Ace Policy provided coverage if the Property became either "temporarily uninhabitable" or "permanently uninhabitable."  (Id. at ¶ 7; see also id. (Exhibit B thereto, the Ace Disaster Mortgage Protection Policy).)  In the event the Property became "permanently uninhabitable," Ace was to pay the total unpaid balance of the mortgage on the Property.  (See id. at ¶ 7.)  The Ace Policy was maintained for several years.

On September 15, 2004, and April 2, 2005, the Property sustained serious damage following severe flooding.  (Id. at ¶ 8.)  According to Ms. Lindsey, the Property was rendered uninhabitable within the terms of the Ace Policy.[2]  (Id. at ¶ 9.)  Following the first incident, Ms. Lindsey made a claim for damages under the policy.  (Id. at ¶ 10.)  In response to the claim, Ms. Lindsey was informed that Chase had cancelled the Ace Policy.  (Id.)  By letter dated February 5, 2005, Chase referred Ms. Lindsey to an April 21, 2003 letter it had sent her to notify her that it had cancelled the Ace Policy and would no longer hold the $10.90 each month

---

[2]Ms. Lindsey also claims loss of personal items in excess of $50,000.  (See Defendant's Notice of Removal, Exhibit E - Plaintiff's Amended Complaint, Dkt. Entry 1-7, at ¶ 25.)

for the insurance premium.  (Id. at ¶ 11.)  Ms. Lindsey alleges she never received the April 21,

2003, correspondence.  Furthermore, Ms. Lindsey avers that Chase continuously withheld

$10.90 each month subsequent to April 21, 2003, when Chase allegedly notified Ms. Lindsey

that Chase had cancelled the Ace Policy.  (Id. at 12.)  Because Chase continued to withhold the

$10.90, Ms. Lindsey filed a claim with Chase following the April 2, 2005, flood.  (Id. at ¶ 22-23.)

To date, Chase has not accepted the claim or made any payments in connection therewith. (Id.

at ¶ 23.)

On March 6, 2006, Ms. Lindsey filed a complaint against Chase in the Court of Common

Pleas for Wyoming County.  (See Defendant's Notice of Removal, Exhibit A - Plaintiff's

Complaint, Dkt. Entry 1-3.)  On May 1, 2006, Chase filed preliminary objections to the

complaint.  (See Defendant's Notice of Removal, Exhibit D - Defendant's Preliminary

Objections, Dkt. Entry 1-6.)  Ms. Lindsey subsequently filed an amended complaint on May 22,

2006, rendering the preliminary objections moot.  (See Defendant's Notice of Removal, Exhibit

E - Plaintiff's Amended Complaint, Dkt. Entry 1-7.)  Chase filed preliminary objections to the

amended complaint on June 7, 2006.  (See Defendant's Notice of Removal, Exhibit F -

Defendant's Preliminary Objections, Dkt. Entry 1-8.)  On June 19, 2006, Chase removed the

action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

The amended complaint asserts three claims against Chase.  First, Ms. Lindsey alleges

Chase breached the Agreement by cancelling the Ace Policy and thereafter continuing to

withhold the $10.90 each month without notification to Ms. Lindsey or maintaining flood

insurance.  Second, Ms. Lindsey contends that Chase is an "insurer" who acted in bad faith

when Chase denied Ms. Lindsey's "claim" following the April 2, 2005, flood.  Finally, Ms.

Lindsey claims Chase was negligent when it cancelled the Ace Policy, continued to withhold the

$10.90 each month after cancelling the Ace Policy, and failed to properly inspect the Property

to ascertain whether it is located in a flood zone.  Chase moves the Court to dismiss all three

claims.[3]

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

The standard the Court applies when addressing a motion to dismiss a complaint for

"failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), is well-

settled.  In considering a motion to dismiss, the Court must accept all well-pled facts of the

complaint as true, as well as all reasonable inferences drawn therefrom.  Javorski v. Nationwide

Mutual Ins. Co., No. 3:06-CV-1071, 2006 WL 2225851, at *7 (M.D. Pa. Aug. 2, 2006).  A motion

to dismiss under Rule 12(b)(6) should only be granted where "'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Id. at

---

[3]Chase filed preliminary objections in state court on the basis of legal insufficiency of the amended complaint.  See Pa.R.C.P. 1028(a)(4).  Also known as a "demurrer," see id., this type of preliminary objection is the Pennsylvania equivalent to the 12(b)(6) motion to dismiss filed in federal court.  See Fed.R.Civ.P. 12(b)(6).  Thus, the Court will treat Chase's preliminary objections as if Chase filed a 12(b)(6) motion to dismiss.

*6 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The moving party bears the burden

to establish the absence of an actionable claim.  Id. at *7 (citing Johnsrud v. Carter, 620 F.2d

29, 33 (3d Cir. 1980)).

      B. The Breach of Contract Claim

      Ms. Lindsey alleges Chase breached the Agreement by cancelling the disaster

mortgage protection policy (the flood insurance policy) and by continuing to withhold the $10.90

in escrow each month without notifying Ms. Lindsey or purchasing flood insurance.[4]  Chase

argues Ms. Lindsey cannot sustain her breach of contract claim because her amended

complaint fails to allege that the Secretary required her to maintain flood insurance on the

Property.  Chase argues that, because Ms. Lindsey fails to allege that flood insurance was

required for the Property, Chase was under no obligation to maintain coverage.  Chase also

dismisses Ms. Lindsey's claim that Chase's unilateral cancellation of the Ace Policy and

continued withholding of the $10.90 for the payment amounted to a breach of the Agreement.

_____

      [4]The relevant language of the Agreement provides:

> Borrower shall also insure all improvements of the Property, whether
> now in existence or subsequently erected, against loss by floods to the
> extent required by the Secretary [of Housing and Urban Development].
> All insurance shall be carried with companies approved by Lender.
> The insurance policies and any renewals shall be held by the Lender .
> . . .

(Defendant's Notice of Removal, Exhibit E - Plaintiff's Amended Complaint (Exhibit A thereto, at
¶ 4), Dkt. Entry 1-7.)

Chase contends that it had authority to cancel the Ace Policy because the Agreement provided "[t]he insurance policies and any renewals shall be held by the Lender."

Under Pennsylvania law,[5] a party must establish three elements to prevail on a breach of contract claim: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002), appeal denied, 856 A.2d 834 (Pa. 2004).  The second criterion, a contractual duty, is crucial because, absent a duty by one of the contracting parties, there can be no breach.  Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038 (Pa. Super. Ct. 2003).  In Kane, a group of homeowners brought a class action against various insurers alleging breach of contract for failure to pay the full replacement cost for property damage.  Id. at 1040-41. Several of the insurers countered that, where the homeowners failed to repair or replace the property, the insurers' obligation was to make payment on an actual cash value basis, which meant there could be deductions for depreciation.  Id. at 1041, 1043.  The court agreed that the insurers had no contractual duty under the insurance contract to pay the full replacement costs in the absence of repairs by the homeowners, as the contract language was clear that the insurer's obligation was limited to the actual cash value with deductions for depreciation.  Id. at

_____

[5]It is not disputed that Pennsylvania law governs all three of Ms. Lindsey's claims. Moreover, the Agreement provides that it shall be governed by Pennsylvania law.  (See Defendant's Notice of Removal, Exhibit E - Plaintiff's Amended Complaint (Exhibit A thereto, at ¶ 14), Dkt. Entry 1-7.)

1049-50.  Accord Transamerican Office Furniture v. Travelers Property & Cas., 222 F. Supp. 2d 689 (E.D. Pa. 2002) (insurer's failure to provide a renewal notice, or notice that the policy was about to lapse, was not a breach because the insurer had no duty under the contract to provide the notice).

Like the defendants in Kane and Transamerican, Chase argues it too had no obligation under the Agreement to maintain flood insurance and was free to cancel the Ace Policy. However, at this stage of the proceedings, the Court cannot conclude "beyond a doubt" that Ms. Lindsey's amended complaint does not state a breach of contract claim.  There was a contract between Ms. Lindsey and Chase.  And, although the amended complaint does not allege that the Secretary required the Property to be insured against flood damage, the fact that the Ace Policy was maintained for several years raises an inference that flood insurance was required. Moreover, the amended complaint avers the continued withholding of the $10.90 each month after Chase cancelled the Ace Policy without notice to Ms. Lindsey of the cancellation.  These facts and inferences therefrom, accepted as true, are sufficient to plead a possible contractual duty that was breached by Chase.  The facts alleged also suggest the basis for an equitable estoppel claim.  Consequently, Chase's motion to dismiss is denied as to the breach of contract claim.

C. Bad Faith under 42 Pa. Cons. Stat. § 8371

In her second cause of action, Ms. Lindsey asserts that Chase acted in "bad faith" in

denying her "insurance" claim arising from the April 2, 2005, flood.  She seeks special

damages, which are authorized by 42 Pa. Cons. Stat. § 8371.  The statute provides:

> In an action arising under an insurance policy, if the court finds that the
> insurer has acted in bad faith toward the insured, the court may take
> all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the
> > claim was made by the insured in an amount equal to the prime
> > rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.  Chase argues this count should be dismissed because Chase is

not an insurer who issued an insurance policy.  Even if Ms. Lindsey's allegations that Chase

acted in bad faith by refusing to accept her claim following the April 2, 2005, flood are accepted

as true, Ms. Lindsey cannot recover under section 8371.  The Court agrees.

In Southeastern Pennsylvania Transportation Authority v. Holmes, 835 A.2d 851, 852

(Pa. Commw. Ct. 2003), plaintiffs were passengers in a vehicle owned and operated by SEPTA

when they sustained injuries in a motor vehicle accident.  The plaintiffs eventually filed a

complaint against SEPTA alleging, among other things, statutory bad faith under section 8371.

Id. at 853.  Specifically, the plaintiffs alleged that SEPTA, a self-insured government agency,

acted in bad faith by delaying and imposing conditions on plaintiffs' attempts to obtain first party

and uninsured motorist coverage.  Id.  SEPTA countered that it cannot be liable under section

8371 because it is self-insured and not an insurance company.  Id. at 854.

8

    The Commonwealth Court agreed.  The court analyzed three key terms of section 8371:

"insurance policy", "insurer", and "insured."  The court defined these terms by incorporating

definitions from other statutes and resources.  An insurer is a person "'who is doing, has done,

purports to do, or is licensed to do an insurance business, and is or has been subject to the

authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance

commissioner.'"  Id. at 856-57 (quoting 40 Pa .Stat. § 221.3) (emphasis by court).  An insurance

policy is an "'instrument in writing, by which one party (insurer), in consideration of a premium,

engages to indemnify another (insured) against a contingent loss.'"  Id. at 857 (quoting Black's

Law Dictionary 1157 (6th ed. 1990)).  Furthermore, an insurance policy must be in writing and

may only be issued following review by, and approval of, the state insurance regulator.  Id. at

857 n.19 (citing 40 Pa. Stat. § 477b).  Finally, under the Motor Vehicle Code, an insured is an

"'individual identified by name as an insured in a policy of motor vehicle liability insurance.'"  Id.

at 857 (quoting 75 Pa. Cons. Stat. § 1702) (emphasis by court).  Applying these definitions, the

court concluded SEPTA was not liable under section 8371 because SEPTA was not licensed to

do insurance business; did not accept liability of others in consideration of periodic premiums;

and the plaintiffs did not produce an insurance policy naming them as insureds.  Id.  See also

Powell v. Crawford & Co., No. C.A. 03-2182, 2003 U.S. Dist. LEXIS 20207, at *2 (E.D. Pa. Oct.

30, 2003) (insurance claims adjuster is not an insurer under section 8371); Dresdner v. State

Farm Mutual Auto. Insurance Co., No. C.A. 95-4305, 1995 U.S. Dist. LEXIS 11213 (E.D. Pa.

Aug. 8, 1995) (same).

It is clear under Pennsylvania law that the amended complaint does not establish an entitlement to relief under section 8371.  Ms. Lindsey asserts breach of contract, i.e., failure to procure insurance as purportedly required by a mortgage agreement.  The amended complaint does not aver any facts that Chase has agreed to assume certain risks, such as flood damage to the Property, in consideration for premiums; that Chase is licensed to conduct insurance business in Pennsylvania; that the Agreement was reviewed and approved by the state insurance regulator; or that Chase issued an insurance policy naming Ms. Lindsey as an insured.  If an insurance claims adjuster was deemed not to be an insurer, see Powell; Dresdner, then Chase, an entity more remote from the insurance business than a claims adjuster, cannot be an insurer under section 8371.  Therefore, because Ms. Lindsey cannot recover under 42 Pa. Cons. Stat. § 8371, Chase's motion to dismiss this claim will be granted.[6]

---

[6]Ms. Lindsey protests our dismissal of her bad faith claim by arguing that Chase has voluntarily agreed to insure Ms. Lindsey pursuant to the terms of the Ace Policy.  Specifically, because Chase has continued to withhold the $10.90 after the cancellation of the Ace Policy, Ms. Lindsey surmises the "only logical assumption would be that Chase assumed the risk of the policy that the Defendant had with Ace and thus assume[d] the risk of providing flood insurance to [Ms. Lindsey]."  (Memorandum of Law of Plaintiff, Sharon Lindsey, in Opposition to the Preliminary Objections (Motion to [Dismiss]) Filed by Defendant, Dkt. Entry 5-1, at 8.)  Ms. Lindsey does not cite any authority for the proposition that a person or entity, clearly outside the definition of an insurer, nevertheless is subject to liability under section 8371 under these circumstances.  In any event, as the Court's discussion plainly illustrates, section 8371 applies only to persons or entities who are literally "insurers."  See also T & N PLC v. Pennsylvania Insurance Guaranty Association, 800 F. Supp. 1259, 1262 (E.D. Pa. 1992).

D. <u>Negligence</u>

Finally, Ms. Lindsey presents a negligence cause of action against Chase.  Specifically,

Ms. Lindsey avers that Chase owed a duty to her to maintain flood insurance on the Property in

accordance with the Agreement.  She argues Chase was negligent, reckless, and careless in

unilaterally cancelling the Ace Policy; in continuing to withhold premiums after the Ace Policy

was cancelled; in concluding the Property was not located in a flood zone as of April 21, 2003;

in failing to properly inspect the Property to ascertain whether it was located in a flood zone;

and failing to reasonably interpret the terms of the Agreement.  As a direct result, the Property

is permanently uninhabitable, and she suffered a loss of personal items.  Further, Ms. Lindsey

was damaged because she no longer has a disaster mortgage protection policy.  Chase

counters that the negligence claim is barred by either the "gist of the action" doctrine or the

economic loss doctrine.

The "gist of the action" doctrine was recently discussed in  Hart v. Arnold, 884 A.2d 316

(Pa. Super. Ct. 2005).  The court reviewed Pennsylvania law and concluded the gist of the

action doctrine bars tort claims

> (1) arising solely from a contract between the parties; (2) where the
> duties allegedly breached were created and grounded in the contract
> itself; (3) where the liability stems from a contract; or (4) where the tort
> claim essentially duplicates a breach of contract claim or the success
> of which is wholly dependent on the terms of the contract.

Id. at 340 (quoting eToll, Inc. V. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. Ct.

11

2002)).  See Phico Insurance Co. v. Presbyterian Medical Services Corp., 663 A.2d 753,

757(Pa. Super. Ct. 1995) (crucial distinction between contract and tort actions is the latter "lie

from breach of duties imposed as a matter of social policy while the former lie for breach of

duties imposed my mutual consensus").  In Hart, the plaintiff brought a fraud action based upon

defendant's failure to perform a promise to move certain utility poles.  Id. at 324.  The court

rejected plaintiff's claim because the performance duties were grounded in the contract, and the

fraud claim duplicated the breach of contract claim.  Id. at 341.  See also Blue Mountain

Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 403-06 (E.D. Pa. 2002)

(applying gist of the action doctrine to bar plaintiff's negligent misrepresentation and fraud

claims where the allegations supporting those claims related to statements of intent to perform

under the contract).

     The economic loss doctrine applies only in tort cases; the doctrine is irrelevant to claims

arising from a contractual duty.  See Ellenbogen v. PNC Bank, N.A., 731 A.2d 175, 188 n.26

(Pa. Super. Ct. 1999).  The doctrine bars a "'plaintiff from recovering purely economic losses

suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that

the defendant's conduct caused actual physical harm to a plaintiff or his property.'"  Id. (quoting

Public Services Enterprise Group, Inc. v. Philadelphia Electric Co., 722 F. Supp. 184, 193

(D.N.J. 1989)).

     In Spivack v. Berks Ridge Corp. Inc., 586 A.2d 402, 404 (Pa. Super. Ct. 1990),

purchasers of new residential condominiums filed a complaint against the developers and builders for defects in the construction.  The defects included inadequate insulation and inadequately designed heating and air conditioning.  Id.  One of the claims asserted was negligent design and construction.  Id.  The court rejected the negligence claim because the damages were solely economic; the record was devoid of any evidence that the plaintiffs sustained personal injury or property damage as a result of the negligent design and construction.  Id. at 405.  See also Aikens v. Baltimore and Ohio Railroad Co., 501 A.2d 277, 278 (Pa. Super. Ct. 1985) (rejecting plaintiffs' negligence claim where only injury was economic, i.e., loss of work and wages).

The Court agrees that Ms. Lindsey's negligence claim is barred under either the gist of the action or economic loss doctrines.  Ms. Lindsey's relationship with Chase was based entirely on the Agreement; but for the Agreement and Chase's alleged duty to maintain flood insurance on behalf of Ms. Lindsey, Chase would not have a duty (if it had one at all) to inspect the Property to ascertain whether it was located in a flood zone.  The "gist" of Ms. Lindsey's claim, the essential component thereof, appears to be based upon Chase's performance under the Agreement.  Furthermore, like the fraud claim in Hart, Ms. Lindsey's negligence claim duplicates her breach of contract action.  Therefore, the claim is barred by the gist of the action doctrine.

Even if Ms. Lindsey's claim could properly be characterized as a tort claim, Chase's

failure to maintain the flood insurance did not cause the flood that damaged the Property, rendered it "permanently uninhabitable," and damaged Ms. Lindsey's personal items.  Instead, Chase's failure to maintain flood insurance means Ms. Lindsey must continue to pay the mortgage of an uninhabitable residence and incur the expense of replacing her personal items. In other words, Ms. Lindsey "no longer has a disaster mortgage protection policy for which she can assert a claim."  Her losses are economic and cannot be recovered under Pennsylvania law.  See, e.g., Spivack; Aikens.  Accordingly, Chase's motion to dismiss the negligence claim will be granted.

## III. CONCLUSION

For the reasons set forth above, this Court will grant Chase's motion to dismiss Counts II and III of the amended complaint.  In all other respects, the motion to dismiss is denied.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON LINDSEY** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **3:CV-06-1220** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **CHASE HOME FINANCE L.L.C.** | : | |
| **Defendant** | : | |

## <u>ORDER</u>

**NOW, THIS 30th DAY OF AUGUST, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The motion to dismiss (Dkt. Entry 1-8) is **GRANTED** as to Counts II and III of the amended complaint (Dkt. Entry 1-7).

2. Counts II and III of the amended complaint (Dkt. Entry 1-7) are **DISMISSED.**

3. In all other respects, the motion to dismiss is **DENIED.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania